697 S.E.2d 42

**James Michael CASEY, D.V.M., M.S., Petitioner Below, Appellee**

v.

**WEST VIRGINIA BOARD OF VETERINARY MEDICINE, Respondent Below, Appellant.**

**No. 35288.**

Supreme Court of Appeals of West Virginia.

Submitted March 3, 2010.

Decided April 1, 2010.

---

Katherine Rafter Campbell, Attorney General's Office, Charleston, WV, for the Appellant.

James M. Casey, Point Pleasant, WV, for the Appellee.

PER CURIAM:

The West Virginia Board of Veterinary Medicine ("Board") appeals from the April 14, 2009, order of the Circuit Court of Kanawha County, granting a writ of mandamus to Appellee James Michael Casey, D.V.M., M.S. Pursuant to the trial court's ruling, the Board was directed to interview Dr. Casey as the final requirement necessary to obtain a license to practice veterinary medicine in West Virginia.[1] The trial court determined that Dr. Casey, a non-resident applicant, had met the required qualifications to obtain a license by means of reciprocity. The Board argues that the trial court lacked the necessary authority to issue a writ of mandamus given that the Legislature has expressly granted the Board discretionary authority concerning the qualifications required for licensure and the use of reciprocity for licensing purposes. Upon our review of the record in this matter in conjunction with the applicable statutes and legislative rules, we conclude that the trial court committed error by issuing a writ of mandamus directing the Board to take action with regard to Dr. Casey's application.

**A. Factual and Procedural Background**

Dr. Casey, a Maryland resident, initially contacted the Board to obtain an application to practice veterinary medicine in this state in February 2004.[2] He filed the required written application with the Board in March 2005. Upon its review of Dr. Casey's application, the Board determined that the application was incomplete due to the lack of a National Board Examination ("NBE") score. The Board requires that an applicant's NBE

---

1. When Dr. Casey submitted his application to the Board in 2005, the rules required that an applicant who was seeking to obtain licensure by means of reciprocity submit to a personal interview with the Board. When the rules were amended in 2006, the Board eliminated the interview requirement, along with the right to obtain licensure through reciprocity. *Cf.* W.Va. R. tit. 26, § 1–8.1, –8.2 (1992) to W.Va. R. tit. 26, § 1–5.6 (2006).

2. Dr. Casey is currently licensed to practice veterinary medicine in eight states. Those states are Maryland, Virginia, Delaware, Georgia, Florida, Pennsylvania, New Jersey, and Kentucky.

score be reported to it directly from the approved national reporting service—the Veterinary Information Verification Agency ("VIVA").[3] By letter dated May 6, 2005, the Board notified Dr. Casey that his application was incomplete due to the missing test score. Based on Dr. Casey's personal assurance that transmittal of the NBE score from VIVA was forthcoming, the Board allowed him to sit for the June 2005 West Virginia examination.[4]

When the Board refused to act upon his application due to the continued non-transmittal of the NBE score, Dr. Casey filed a Petition seeking a Writ of Mandamus and a Declaratory Judgment in the Kanawha County Circuit Court.[5] Following an evidentiary hearing that was held on March 14, 2008, the parties submitted proposed findings of fact and conclusions of law.[6] By order entered on April 14, 2009, the trial court granted a writ of mandamus directing the Board to take specific action on Dr. Casey's application. Through its appeal to this Court, the Board seeks review of the trial court's issuance of the mandamus ruling.

### B. Standard of Review

As we recognized in syllabus point one of *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995): "The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of man-

damus is de novo." *Id.* at 58, 464 S.E.2d at 579. It is axiomatic that "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). With these standards in mind, we proceed to determine whether the trial court committed error by issuing the subject writ of mandamus.

### C. Discussion

Pursuant to West Virginia Code § 30–10–4 (2007), the Legislature has declared that the Board "shall have the power to" "[i]ssue, renew, deny, suspend or revoke licenses and temporary permits to practice veterinary medicine in this State ... consistent with the provisions of this article and reasonable rules and regulations promulgated by the board as specified in subdivision (i) of this section." [7] W.Va.Code § 30–10–4(b). As part of this clear grant of legislative authority, the Board was given the discretion to issue veterinary licenses by reciprocity. *See* W.Va.Code § 30–10–8. Because mandamus does not typically lie to compel discretionary acts,[8] the Board maintains that the trial court lacked the authority to compel it

---

3. The national reporting service used by the Board in 1987 when Dr. Casey took the NBE was the Interstate Reporting Service. When VIVA replaced the Interstate Reporting Service in late 1999, all of the data maintained by Interstate Reporting Service was transferred to VIVA.

4. Dr. Casey passed the written state jurisprudence examination administered by the Board as part of the licensure process. *See* W.Va.Code § 30–10–7.

5. The petition was filed on May 7, 2007.

6. The Board filed a motion to strike the submitted findings proposed by Dr. Casey based on the inclusion of an exhibit (No. 1) that was never admitted into evidence at the hearing. The exhibit purports to be a document from the Georgia Secretary of State to the Board that contains score-related information relevant to Dr. Casey's licensure by the state of Georgia. Noting that the trial court failed to rule on its motion, the Board argues that the trial court's apparent reli-

ance on this document in making its ruling was improper given that the Board was prevented from inquiring as to the information in the document and from objecting to the document's admission into evidence.

7. Pursuant to subdivision (i), the Board "shall have the power to" "[p]romulgate, amend, or repeal reasonable rules and regulations ... to implement the provisions of this article...." W.Va.Code § 30–10–4(i).

8. *See McComas v. Board of Educ.*, 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996) (recognizing that "issuance of a writ of mandamus is normally inappropriate unless the right or duty to be enforced is nondiscretionary"); *but see* Syl. Pt. 4, *Dillon v. Board of Educ.*, 177 W.Va. 145, 351 S.E.2d 58 (1986) (holding that "[m]andamus will lie to control a board of education in the exercise of its discretion upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of the law").

to issue Dr. Casey a license to practice veterinary medicine by means of reciprocity.

When Dr. Casey submitted his application in March 2005, there were three methods available for obtaining a veterinary license in this state.[9] The first and primary method provided by the statutory scheme is licensure through examination. *See* W.Va.Code §§ 30–10–6, –7. Following its review of an application and supporting information, the Board is statutorily directed to "admit the applicant to the next [scheduled] examination," provided "the applicant possesses the proper qualifications." W.Va.Code § 30–10–6. By law, the Board is required to give at least one written examination each year. *See id.* To qualify for licensure under the examination method, the Board related that "the applicant needs to achieve a passing score on the national board examination as determined by the criteria developed by the Board, have the scores transmitted to the Board's office by a national testing service, and achieve a passing score on the state jurisprudence examination."

Two additional means of obtaining a veterinary license are provided under the statutory scheme. Under West Virginia Code § 30–10–8, licensure may be granted pursuant to reciprocity. While reciprocity is an approved method of obtaining a veterinary license, the Legislature has provided that the use of this method is subject to the Board's discretion.[10] W.Va.Code § 30–10–8. As part of its decision to allow licensure by reciprocity, the Legislature granted the Board discretion to "enter into agreements for reciprocal licensing with other jurisdictions having substantially similar requirements for licensure." *See id.* The third and final method of obtaining a veterinary license is to apply for admission without written examination[11] pursuant to the provisions of West Virginia Code § 30–10–8. This method of licensure is also subject to the Board's discretion.[12]

When Dr. Casey filed his application with the Board, he sought to obtain his license by means of the examination method. The Board maintains that it requires, and has always required, the submission of a NBE score as part of the examination method of obtaining a license. Because Dr. Casey has never submitted the required NBE score, the Board continues to view his application as incomplete.[13]

At some point, Dr. Casey apparently abandoned the examination method in favor of seeking to obtain his license by means of reciprocity.[14] Appellee argued below that

9. While the applicable statutes still provide for all three methods of seeking licensure, the Board currently permits licensure only by means of the examination method. *See* W.Va. R. tit. 26, § 1–5 (2006). Because the Legislature imposed the Board with the power to determine the qualifications necessary for licensure and further granted the Board the necessary rule-making authority to implement licensing-related requirements, it is within the Board's purview to confine licensure to one of the three statutorily-recognized methods. The two methods of licensure that the Board no longer utilizes were methods that the Legislature expressly made subject to the Board's discretion. *See* W.Va.Code § 30–10–8.

10. In contrast to the Board's discretion to admit an applicant by reciprocity, the Legislature has provided that the Board is mandated to admit an applicant to the state jurisprudence examination upon the submission of a completed application demonstrating the required elements for admission to practice in this state. *See* W.Va.Code § 30–10–6.

11. Through its enactment of a provision designed to permit licensure without an examination, the Legislature created a mechanism by which an applicant could, subject to the Board's discre-

tion, avoid the requirement of taking and passing the state veterinary examination—not the national board examination. *See* W.Va.Code § 30–10–8.

12. By statute, admission without written examination is limited to residents of this state who seek to be admitted based on having passed the NBE within three years of applying for a West Virginia license or who, prior to applying, have practiced veterinary medicine for five years in a state whose licensing requirements are substantially similar to this state's requirements. *See* W.Va.Code § 30–10–8.

13. The right to file an administrative appeal with regard to a licensing decision arises upon the Board's denial of an application. *See* W.Va.Code § 30–10–12 (2007).

14. In response to questions from the Court during the oral argument of this case, Appellee's counsel explained in a forthright manner that the reason the examination method of seeking licensure was aborted during the pendency of Dr. Casey's license application was two-fold. First, Dr. Casey apparently learned that the score he

the Board was required to issue a veterinary license to him by reciprocity based on the fact that reciprocity is one of the three routes available for obtaining licensure. In making this argument, Appellee seeks to abrogate the Board's clear legislative grant of authority to control licensing and, specifically, its attendant authority to select the qualifications required for practicing veterinary medicine in this state. *See* W.Va.Code § 30–10–8; W.Va. R. tit. 26, § 1–8.4 (1992). In addition, Dr. Casey asks this Court to disregard the Legislature's specific grant of discretion to the Board to determine when admission by means of reciprocity will be permitted. The legislative rules in effect at the time of Dr. Casey's application confirm the discretionary nature of admission by reciprocity: "All applicants for license by reciprocity are hereby advised that the granting of licensure by reciprocity is by privilege, not by right; and the granting of the license rests solely in the discretion of the West Virginia Board of Veterinary Medicine." W.Va. R. tit. 26, § 1–8.4.

The Board represents, and the record in this case indicates, that licensure by means of reciprocity has been permitted only in instances when there was an agreement with the applicant's licensing state which provided for reciprocal admissions between the two states. Significantly, when Dr. Casey sought admission in 2005, there were no reciprocity agreements in effect between West Virginia and any other state.[15] Even assuming, *arguendo*, the existence of such a reciprocal agreement between this state and one of Dr. Casey's licensing states, he would still have been required to submit a NBE score as part of his application. Wanda Goodwin, the Board's Executive Director for more than twenty-eight years, testified that no applicant seeking admission by reciprocity has been issued a license without being required to submit a qualifying NBE score during her tenure with the Board.[16]

In issuing its ruling, the trial court found that "substantial evidence exists that Dr. Casey has practiced in eight other states and has surpassed the requirements for licensure in the State of West Virginia." While the record supports the trial court's finding that eight states have issued veterinary licenses to Dr. Casey, there is nothing in the record to support the finding that he has surpassed the West Virginia requirements for licensure.[17] The only person to testify at the evidentiary hearing was Ms. Goodwin. Appellee's counsel unsuccessfully tried to get Ms. Goodwin to adopt his position that the Board should view the sufficiency of Dr. Casey's NBE score for Georgia's licensure requirements in 1987 as conclusive evidence of a sufficient NBE score for licensure purposes in this state. Adamant in explaining her response, Ms. Goodwin stated that the Board has no way of determining how Georgia calculates its scores. She further opined: "It's not up to Georgia to determine West Virginia's" scoring criteria.

The rules in effect when Dr. Casey applied for licensure are clear that "[a]ll veterinary applicants, unless qualified for license without written examination, must have received a passing score on the National Veterinary Boards." W.Va. R. tit. 26, § 1–3.10.[18] The rules further provide that "[i]t is the applicant's responsibility to have the national test-

obtained on the NBE was not sufficient under this state's standards for admission. And, second, he would be required to report the Board's denial of his application to the other eight states in which he currently is licensed to practice veterinary medicine if the Board acted upon his application following transmittal of an insufficient NBE score.

**15.** While reciprocal agreements existed between West Virginia and Kentucky, Florida, and Ohio in the past, all of those agreements had been cancelled by the participating state by the time Dr. Casey submitted his application.

**16.** The rules in effect at the time Dr. Casey submitted his application did provide the Board with discretion to "waive the requirement of

National Board scores for applicants by reciprocity." W.Va. R. tit. 26, § 1–8.3 (1992).

**17.** In ruling that Dr. Casey had surpassed this state's licensure requirements at the time he initially obtained his Georgia license, the trial court cited the fact that Georgia, in contrast to West Virginia, included a practical component to its state examination.

**18.** The current rules in effect make no exception and require every applicant for licensure to submit a NBE score. W.Va. R. tit. 26, § 1–5.6 (2006).

ing service forward a copy of his or her National Board scores to the secretary-treasurer of the Board." *Id.* The record in this case is clear that Dr. Casey's NBE score has never been transmitted to the Board from the national reporting service.

Given the discretionary nature of licensure by reciprocity, the Board maintains that Dr. Casey failed to demonstrate a clear legal right to the remedy he sought below. *See State ex rel. McLaughlin v. W.Va. Court of Claims*, 209 W.Va. 412, 549 S.E.2d 286 (2001) (recognizing that party seeking writ of mandamus must show clear legal right thereto and corresponding duty on respondent to perform the act demanded); Syl. Pt. 1, *Koebert v. City of Clarksburg*, 114 W.Va. 406, 171 S.E. 892 (1933) ("One seeking relief by mandamus must show clear legal right to remedy"). Attempting to circumscribe the prohibition on using mandamus to compel a discretionary act, Dr. Casey argues that the Board's act in denying [19] licensure to him was arbitrary and capricious. *See* Syllabus *Beverly Grill, Inc. v. Crow*, 133 W.Va. 214, 57 S.E.2d 244 (1949) (holding that "[m]andamus lies to control the action of an administrative officer in the exercise of his discretion when such action is arbitrary or capricious"); Syllabus *Walden v. State Comp. Comm'r*, 113 W.Va. 307, 167 S.E. 743 (1933) ("Mandamus does not lie to coerce an administrative officer in the performance of a discretionary act, except in case of caprice, passion, some ulterior motive, or misapprehension of law."). Appellee offers no evidence, however, to support his contention that the Board's failure to grant him a license was arbitrary or capricious.[20]

The record in this matter reflects that the trial court lacked the necessary grounds for directing the Board to perform a discretionary act-the issuance of a veterinary license by means of reciprocity. Given the lack of any evidence that the Board was acting in an arbitrary or capricious manner by requiring

the transmittal of a NBE score before acting on Dr. Casey's application, Appellee failed to demonstrate a clear right to the relief he sought below. Based on Appellee's failure to demonstrate the necessary grounds for extraordinary relief, the trial court's decision to issue a writ of mandamus through its order of April 14, 2009, was in error. *See Kucera*, 153 W.Va. at 539, 170 S.E.2d at 367, syl. pt. 2. Accordingly, we reverse.

Reversed.

---

19. While Dr. Casey repeatedly represents that the Board denied his application, there has yet to be a ruling on the application due to its incomplete status.

20. The Board observes the irony of Appellee's argument, noting that it *would* be acting in an

arbitrary and capricious manner if it were to grant Dr. Casey a license by means of reciprocity without the transmittal of a NBE score when, as the record reflects, every other applicant who has obtained licensure in that manner has been required to submit a passing NBE score.